60216, Jackson v. City of Jackson, Mississippi. Mr. Hazard. May it please the court. I'd like to reserve most of my time in answering your questions today, but a few points I'd like to make before I get to the questions. Point number one, Judge Oldham referenced being a candidate in court. I need to be under Rule 3.3 of the Mississippi Rules of Professional Conduct in Canada. I need to confess to our briefing. Our briefing was done in 2023. Why it's not in the record is my understanding right now presently that EPA and Jackson Water has cleaned the water that we're talking about today of utilities. One of the reasons I'm obligated to tell the court this is because it's a material fact. If my clients lost the ability to go to Africa to see the white rhino, I would not be under this obligation. If the city got the zip code wrong on my bill, I would not be under this obligation. The fact that I'm under this obligation further alludes to an injury in the back of my client's head stinging. That's why I have to inform the court of this fact. Fact number two, or issue number two, opposing counsel did not oppose the motion to amend to add in Jackson Water to the United States of America. Yesterday, Judge Wingate had an adventure in hearing what he was talking about tax rates, and he delayed his ruling because the intervening plaintiffs that he allowed in that case had a right to question the expert. Thirty years ago, no one knew how EPA or Jackson Water was going to work because this is unprecedented. That's literally the type of back action I was looking for, is how the city of Jackson Water Department will function moving forward and what due process rights my clients have with that department, who's running it, and how it will operate. We were dismissed on that request, but yesterday each of the plaintiffs got that request, and I can produce a 28-letter giving the court that authority. The third issue that I'd like to bring up to the court is the actual ruling of Judge Wingate. If you look at the very last page of this order, for years Jackson residents have faced not only problems with inaccurate billing, but also with the quality of drinking water, issues such as lead contamination, aging infrastructure, and serious disruptions have contributed to the widespread mistrust among residents. However, ongoing efforts exist to improve both the quality of water and the billing system. That's on the 12b-6 determination. None of that that the court concluded was in my compliance. Only the 12b-1 evidence presented. The city did not present any experts saying that the water hasn't worked. My client surely did With that said, I do believe that shows that the district court judge violated 12b-6 standards by not accepting the allegations of the plaintiff's true 12b-1s evidentiary standards by not looking at the administrative process in the affidavit. The amended complaint, the paragraph that alleges the process deprivation is paragraph 17. Correct. And that's supported by your administrative judge, and you actually prevailed with the forgiveness and the refund for your clients on the billing. Correct. And that administrative judge said at the specifics, we're only here for clerical errors. Well your affidavit and the paragraph just says the judge said we aren't here to quote address the meter, the pressure, the quality. Correct. So I don't see where there was, where you've tied any process deprivation. You actually were notified of a bill that was bad. You had a hearing about a bill that was bad. You win on the bill back. How does any of that tie to the alleged protected property interest that the meters weren't working, the pressure wasn't good? When you call a bill, Mississippi recognizes the property. No, I know that, but I'm asking you in the complaint. It seems to me when I call the water service and complain that my meter's broken, I'm not in a billing context. I'm calling with a service complaint. So I just, let me put that as a question. What's your best authority that you've had a due process violation when a judge looks at you and says counsel, that's not the scope of this hearing. We're talking about billing, looks like you're going to win. If you've got water drinkability issues, I can't help you with that. And what I'm saying is, your honor, I do believe you're answering the question for me. The administrative judge had nothing to do with that. But once I have a property right, recognized by the state of the city, whether it's Memphis life or U.S. Supreme Court or Tucker versus non-county that says that sustained utility is a right, a property right, and someone's interfering with that right by providing either a defective meter and or a defective product, contaminated water, water, lead, copper. Then I have a right, I was actually ordered by a judge, suggested by a judge, adjourned to exhaust the pre-administrative remedies that did not exist. We were going there and the city represented that they need to address all that in the administrative process. We were fully going there to discuss all that. That was the representation toward us that all this would be addressed at the hearing. That's not in your complaint. Your honor, I do believe it says that the scope of that hearing was not there. And the affidavit obviously speaks for itself. It's in one paragraph of the affidavit. It just says the judge told you, counsel, stick to the scope. I'm a billing judge. That's it. And I think we're, I'm talking about the district court judge who ordered me there, your honor, when we had to exhaust the administrative remedies. If you look at No. 1, the reason we dismissed No. 1, which was the same argument as No. 2, was to go to administrative hearings. I'm not talking about the administrative judge. I'm talking about No. 1 when we had a status conference in front of Judge Gerger and he said that you need to exhaust administrative remedies because the city was representing in their motion to dismiss that all this would be handled by administrative hearings. Once that representation is made in No. 1, then your honor, no doubt we have some sort of due process. The affidavit and the complaint show you just eliminated the scope of that hearing. It was only for billing before they could interfere or terminate. Part of the reason with the billing was my clients were trying to pay for water from the city and then having to go pay for bottled water. My clients have a fixed or low income so that eventually caught up with them until they have this enormous bill for them for their water supplies. Reverend Jackson has up to $5,000 and got the notice of termination because he could not use the water for what it was for, drinking, cooking, cleaning. Did he get, was his bill forgiven or was his refunded? His bill was partially forgiven but it has not been completely refunded. The reason the termination stopped was because of his case. And once his case is over, I fear that the termination would proceed. We have provided the termination notice to the court and the record. But like I said, the due process, back to your original question, the due process attaches through Tupper and Memphis Life. Using the judge's truck that he was talking about earlier today on the Mississippi Wall, which establishes the property right that we're dealing with here under due process assessment, if I interfere with his ownership of the truck for one moment, it's conversion. The fact that they're providing water that cannot be used is not fulfilling the property right of my client to give a utility service. You may have a property right. I'm focused on the second question. Okay. The reason it didn't give you process, you're saying it's Judge Jernigan who told you? Judge Jernigan. Judge Jernigan. No one. So that's the allegation is there you were misled in terms of thinking that the billing administrator or judge could actually help you with water service and drinkability? The due process comes from once we have a property right to continue utility service given to us by Memphis Life, before they discontinue us, which Reverend Jackson got to notice in the mail, they had to give us a hearing and the whole scope, not just on clerical errors. The whole scope would be what caused that bill. What caused that bill possibly was the that a student, a manufacturing student had settled for $90 million. That's in the complaint. What possibly led to that was getting water that they could not drink or use. That led to my clients having to buy a bottle of water and use other supplies of water, which led to increased bills because they were actually having to spend the money that they had budgeted for the water utilities to survive. That goes into the due process component, Your Honor, because once we have a right, the state can't take away that right without giving it to some people. They gave us nothing. In their 9-1 of their motions dismissed, what they argued was the People's Relief Campaign was an adequate due process agreement. The problem with that, Your Honor, that was a one-time program that was more welfare than administrative. That program, to my knowledge right now, no longer exists. That cannot satisfy a due process agreement versus Aldridge. A meaningful time to be heard in a meaningful way. We have not had that yet. Y'all were just talking about the TSA keeping money that was rightly deserved to the passengers. The City of Jackson said it would pay for defective water meters for $90 million and never told the people what defective water meters they had. They never gave a refund. They never gave a hearing. They had the largest EPA takeover possibly since Flint, and they literally have not told anybody how it's going to work, how you were damaged by this water that we're providing you, not a quality of water, literally triggered the EPA coming in and taking over the utility. There's got to be a due process in the 5th and 14th Amendment under that. Memphis Light was hungry. That's not contamination. Just because you give me a piece of bread that I pay for, if it's moldy, you have not satisfied your requirements. Now, they are sitting here. It is so bad under Sterling. This court recognized for the first time the state community in danger without any exceptions because it shocked the conscience, yet the City will tell you here the behavior did nothing to the actual water rate consumers. It cannot be, Your Honor. First, I lose under not stating standing under injury in fact, where case law on case law shows that any type of bill or any type of breach of the contract establishes case law. The district court cites that on the Spokio, if there was a zip code issue, the district court cites that the speculation running political office satisfies. That's not the same as paying for a product, a commodity that you can't use because it has lead in copper. Then you get into the property right. There's no case law that overrules Memphis Light 2. Memphis Light for copper versus Heinz Ewing. It just does not. There's a property right to have a continued utility service of the importance of it today. They have no case law that overturns that. That's where your due process comes. It is their obligation to give us under the 5th and 14th Amendment to give us a hearing on that matter. They did not provide us any of it. They just told Reverend Jackson to cut your water off. Well, this is the reason we thank the bill so much. We're not hearing that today. That's end of the complaint, Your Honor. That's specifically pled because like I said, we say we're asking for violations for defective water meters. And I can't sit here and tell you that Reverend Jackson had a defective water meter. The mulls know it. But no one knows how to connect it. The rumors are that one water meter was reading the cubic feet and one water meter was reading gallons. But it's not properly reported for it because the EPA hearing did not get into it and this case did not get into it. That sentence I just read from the court is a ruling on summary judgment motion. Not a 12B-6 and not a 12B-1. I presented an affidavit that said the hearing they gave was late to the discovery. Before the city or state could take away my class rights, they had to give me due process. They gave me none. They didn't give me a secondary hearing. They didn't say we'll do this later. They said we don't have to provide you water that's not contaminated and we don't have to tell you why. Because the reason they're telling you why is that the EPA pays. On the 12A-6, the procedural due process is they have to show us that we have to have a right to be heard on why that bill is not right because we could not take that water, drink that water, use that water. I am standing here voting the EPA is all that was they used to take over and kill me. With that, I'm sorry I'm out of time. I apologize. I apologize for getting a little emotional. Good morning. I'm going to try to bring this back to the complaint and the amendment complaint. There's certainly a lot of issues with the city of Jackson's water. There are various litigation matters that involve the city of Jackson's water, some of which are before this board and other matters. The Sterling case that was just mentioned is currently on petition for rehearing on bond. We're waiting for determination about that. I will only say about that, other than that it's not precedential at this point, that it's a substantive due process case. It is not a procedural due process case. This is a procedural due process case. It's up to the plaintiff to establish a deprivation of a property right. It's up to the plaintiff to establish the existence of a protected property interest. It's a little bit of a moving target here because we have the original filed complaint, which is what was dismissed. We also have a proposed amended complaint for which the court denied the amendment, citing an excuse. I can address either or both allegations, but it comes back to the same place. In the original complaint, the entirety of the procedural due process argument appears to be about billing issues. As the court has already noted and as the plaintiffs have acknowledged, since they filed that complaint, they got their procedural due process, they got their administrative hearing, and both of the plaintiffs received positive results from those hearings. One of them received a large credit that apparently was due to leaks that were discovered and were proven to the hearing. The other received some sort of credit. It's not specified in the amended complaint what that credit was. The implication is that it was full credit, but I don't know. In the amended complaint and in the briefings before this court, the argument changes, and the argument appears to be that there's a property interest in the money paid by the plaintiffs. We will acknowledge that we do have a property interest in our money. All of us as citizens have that. But they also, the plaintiffs then have to establish a deprivation of that money by the government. The only allegations of deprivation here is arguably two. One would be paying for what they would call substandard or suboptimal water services. The other would be buying bottled water. Neither one of them works here because what we know at all times is there wasn't ever a termination of water. There wasn't ever a termination of utility services, and that is, in fact, what Memphis requires. That is, in fact, what Mississippi case law under Tucker requires. It didn't happen here. It just didn't happen. To go back, I'll use an analogy that already got brought up by opposing counsel, the truck analogy here. If the city sells someone a lemon car, right, a bad truck, that might be a tool. That might be a problem. It might be a compensation issue. That's one thing. If the city goes out and takes your truck without providing a procedural due process, well, now we've gotten into the area of taking a property interest. It's the same analogy here. The plaintiffs paid their water bills voluntarily. They paid for the utility service. They received the utility service. And that's all it is. The rest of this, frankly, is customer disputes. We don't want to get into a situation where every customer dispute with a governmental entity arises to a protected property interest that also requires due process that also becomes a class action, which is seemingly what the plaintiffs are seeking here. Your Honors, I'll be honest. Why don't they have a cause of action for a defective product? You've lost me there. Well, they might have a cause of action for a defective product. They might have an action for bad water. They might have an action for contamination. The reason they don't have one here is because they didn't plead any of that as to those plaintiffs. Most of the purported harms that were just mentioned aren't actually this complaint or this submitted complaint. But even if they had that, there is no constitutional property interest in a perfect utility being provided. Power goes out. Water services get disrupted. It happens, and it happened in Jackson. There's more water references that are mentioned here. I will note that there is an important distinction. Water is charged by usage. If you don't receive the water, if you decide you're not going to pour water out of the tap and drink it, you're not charged for it because it never came out of your faucet. It never came through your meter. So there's not, under any theory, there's not an issue there. But, Your Honor, the answer is there could be a tort claim. There could be a contract claim. There is a contract claim that's fled here, a state law contract claim. Maybe that's liable. Certainly we can see that, and I don't believe that it is, but I believe there are circumstances where it could be. But because there's no federal interest here, there's no federal jurisdiction, which goes back to our 12v1 arguments, and that's why Judge Wingate chose not to exercise supplemental jurisdiction. Once he discarded the federal claims, there was no reason to maintain supplemental jurisdiction over the state law claims. Your Honor, I can answer questions, but I think the case opens and closes with a very simple concept. The plaintiff has to establish a deprivation of property interest. I've already gone through that. They just can't. They don't. They haven't. No matter how the pleadings are read and how many inferences are granted in favor of the plaintiff, that's not established. There's no deprivation of property interest. The closer they got, I will add one thing. I personally was not involved in this case from the beginning, so the 2020 complaint that we call NOLA 1 or Jackson 1, I only know what you know. I know what's in the record. I have been involved since the filing of the second complaint, and I just want to correct one thing. There was a hearing. For some reason, the transcript is not in the record, but there was a hearing in front of Judge Wingate, and it's the hearing where Judge Wingate permitted the plaintiff to file an amendment to the claim. He said, file your motion, close your amendment. At that complaint, I provided the plaintiff with information I had discovered, which was the threatened, so to speak, cancellation or termination of utilities. I was inadvertently sent. I represented the court, and I've read the transcript in preparation for coming here to refresh my recollection. There was never an actual threat. That was clarified. It was told to opposing counsel. It was told to the court, and it was clarified with the city. There's no situation here where either of these plaintiffs are under threat of this lawsuit. Judge Wingate made alternate rulings. I'm just trying to clear up where you may be. Of course, you'll be defending both. But if it's plausibly alleged that they were getting equivalent of sort of Flint, Michigan lead water, they couldn't drink it, but they were being charged for it. I've always understood with a utility, you would then file a water complaint. You'd get your plumbing receipts. You'd show, well, they refused to come out, whereas most utilities will come out. They'll try to fix your leak. They'll try to fix your meter, whatever. But that's a very different approach than contesting your bill. It is. Yes. And so it struck me that if the water coming out of your tap is black or it's lead-infected, you would have a property interest under Tucker and Memphis Light, and it would be traceable and redressable from the utility. Admittedly, in Jackson, that's an entity that's been changing. But someone's got to come fix it if they're going to charge you for it. I think that's fair. What we don't have here is specific factual pleadings beyond brown water, metal flecks that were found in the filter. I thought they said not drinkable. Well, they said it, but they didn't say why it was not drinkable. I don't always know when New Orleans isn't perfect with its water either. I don't always know what is the contaminant. They'll tell you boil your water because there's something chemically bad for you. But I don't mean to make light of it. So, therefore, my focus was on, you heard, Paragraph 17. The two don't match. The only process that they claim they were deprived is that a judge said to them, we're here about billing, and you're about to win your billing. And that says nothing about whether JXN or some other entity wouldn't have hurried out to find out what's wrong with the meter. Does that? So, on the meter, there's two separate issues that you're addressing there. Well, pressure, meter, I think they listed four. Let me say it this way. On a meter issue, that ultimately is a billing issue. The only thing that can happen if your meter is bad, if your meter is defective, and by the way, even though there are allegations of defective meters here, and even though it is acknowledged that Siemens did, in fact, install many defective meters in the city, there isn't actually an allegation from either of these witnesses that they had a defective meter until you get into the briefing. It's not in the briefings. But in any event, the way a meter defect would be found is you'd get a bill, and you'd say, why am I getting this bill for this amount? And you would go through exactly the process you get. The correction is, we'll give you a credit, or we'll refund you the money, or we'll help you find the leak, whatever it is. What about contaminating water that you can't drink? Right, and that's the second issue. So the second issue is groundwater, metal flakes. I don't trust to drink these, actually. I was raised in here. There are two processes for that. One, you need to come forward with some evidence that it's not safe. There are quarterly reports that went out. When the city has a water system, there's quarterly reports that go out today that say, here's what the EPA has found, here's what this Department of Health has found, here's what's in your water, here's your boil water, where it's at, and so forth. If you came to the city and said, I've got bad water, you would call the Public Works Department. What did their amended complaint allege about contaminated water? Your Honor, what I think it alleges is very broadly and generally that they did not trust drinking the water. One of the complainants said they had groundwater. One of them said they had metal flakes occasionally found in their filter. They, by inference, attach all of these EPA pleadings and other lawsuit pleadings to imply that that might have been the case with them. But there is not a specific allegation in the complaint that I recall that says, I had lead in my water, I had a contaminant in my water that was dangerous. They just said, I didn't drink it, I didn't trust it, I didn't do it. But they'd also have to say, and I made a complaint, and it was a sham, or it was refused. But they didn't actually, there's not an allegation they made that complaint, until they went to a hearing and asked an administrative judge whose job it was not to do that, for him to look at it. There is no pleading or evidence, frankly, that there was any other effort to make that complaint or ask the city or Jackson Water or anybody else, will you come out and look at this. There's no evidence that the plumber was ever called to say, come look at this. There's no evidence that MDH or EPA was called and said, well, you can come test my water real quick, which they'll do for no charge. There's none of that. It's not a complaint. If that happened, yes, there would be a retracement. And by the way, there's other lawsuits going on that demonstrate that, by the way. One other thing I'll add to that, that again would get us back into the substantive due process window. Do they have a property interest in clean water or perfect utility services? I would say that the case law doesn't support that, although there's some flux there, there's some gray area. What Memphis says and what Tucker says is you have the right to continuation of your utilities, that the governmental entity cannot terminate those services for lack of payment when there's a dispute without giving you the opportunity to be heard. And that was done here. Your Honor, if you have no further questions, I have nothing to add. Thank you, counsel. Thank you. May I please report? Specifically, the proposed amended complaint, it states, after detailing the contaminations, the 300 boil water notices, applying those boil water notices to each claimant, where each zip code that I specifically referenced when they had boil water notices, I specifically fled the plaintiff's open quote, undrinkable water, water with contaminants, water with disease-causing organisms. That's at ROA.178. It's in the complaint. And the proposed amended complaint, because I did not have the EPA complaint, and information at the time of the first complaint, in the proposed amended complaint, it states the knowledge had a seamless water meter. It is in the complaint, the proposed amended complaint. It is safe. I would also reference this for ROA.178. The situation when it was sent to the claimant, look at the amount of letters and emails I had to email Jackson and file a temporary restraining order to keep Reverend Jackson from his water utility being cut off. I thought the Knowles did get a refund. The Knowles got a refund, but that's a clerical error. We never addressed what the subject of the suit is. But we continued the Knowles hearing so that the administrative judge could go out there and inspect the plumbing, because the Knowles had a plumber come out there. This is in the record. It's actually in tab six of my record excerpts. The administrative judge canceled the continuance with no reason and said we will not do an on-site inspection. This was all discussed in the record. This is all part of my amended complaint. These correspondents, with them not in it, we don't even have to get to a point whether I had a right to clean water or not. Whether it was a mistake or not, they sent a termination to Reverend Jackson. That satisfies Memphis Light. That satisfies Pine County v. Tucker. That's in the record. It's part of the complaint. That was all ignored. Under due process rights here, under 1286 and 1280, cannot be ignored. The judge cannot say what they were supposed to go out there and do a plumbing inspection. A public counsel said, Your Honor, you just gave the scenario. We are giving water, and it says painful water with contaminants and disease-causing organisms. He just said the water meter will click on that. And we're paying for that, but we can't use that. But there's no remedy to get our money back. Because we don't have any foreseeability. We're paying for water and plumbing. Sterling just said they lied about the lead in the water and the organisms. Somehow my clients are supposed to know what they're getting. And whether it's black sludge, I don't know if that would be worse, black sludge, or water being pooled out, which is literally people matter. But somehow, it's enough to take over the utility, but it's enough to damage the citizens of Jackson. The administrative procedure and the frustration. I think I have nine emails to him asking for a hearing, and a bunch of them restraining order, and imagine what we have. And as soon as this case is over, and that due process and that property right of not paying for water. And once again, I grew up in Greenville, Mississippi. I grew up with brown water. We're talking about EPA violations here. We're not talking about, well, some laymen are speculating it smells. We're talking about contaminants in the water. That I saw it specifically. Now, I've got enough of the magic language to say, well, this is what causes sickness. This is what causes illness. No, that's not this case to bring the contract case. But at no point do my clients, should that have at least an opportunity to be heard for a refund about water they bought. We got refunded for clerical errors. We did not get a refund or have an opportunity for the COLA, disease COVID parasites, or lake. Unless the court has any questions, thank you for your time. Thank you, counsel.